Good morning. Good morning. If it pleases the Court, my name, can you hear me? Pretty good. I think you might be able to speak a little more into that. My name is Patricia Berry, and I represent the appellate Francine McDermott, and she's present right here in court. All right. Thank you. And I'd like to reserve, Your Honor, two minutes for rebuttal. All right. It's aspirational, but I'll hopefully, if the Court doesn't have questions, we'll reserve that for you. Okay. I'd like to start out with this e-mail quote from Mr. Haynes. He's over here. Actually, I saw him, and I was very delighted to see him, because I always thought we had a wonderful relationship, and so did Francine. Quoting from page 40 of my opening brief, he said, and again, I mean, we have been telling Judge Phillips the same thing all along, November, meaning. So this was a dismissal without prejudice. So how are you harmed? You all analyzed this like it was a dismissal with prejudice, but a dismissal without prejudice allows you to refile. So why didn't you just refile? Because I was thinking it was a dismissal with prejudice. Well, what did it say, though? I don't know. Had the statute of limitations run when, if you, could you have refiled it? Well, she didn't argue it, so I doubt that that's something she can argue here. No, it was never, the statute of limitations never argued at any point. I mean, my worry is that I read the order. It says without prejudice. So, frankly, Judge Rakoff stole my question. Which is, if it's without prejudice, you just file again. Oh, my God. I didn't see the four. Oh, my God, I missed every single tree in the forest. In terms of the statute of limitations, the accounting, which is the most important aspect for which the case got dismissed, because we didn't have the accounting, or at least the records to begin in accounting, that statute would still be running. Some of the retaliation. Retaliation. If you look at the Rehabilitation Act, it's three years. You look at the ADA, that's three years. Come on. I mean, I don't think he argued that, so I don't think you get a chance to come up here and argue it. But the biggest question is, I'm having a tough time, just like my good colleague, Judge Rakoff. That all of them. Well, see, what that amounts to is, if it was without prejudice, it isn't as harsh a sanction as with prejudice. So if you can then, when you analyze the factors, which both of you analyzed, both sides, he did the same thing. Everyone presented to the court like it was a dismissal with prejudice. But it says without. So when you analyze the factors and decide was it the highest, without prejudice isn't the highest sanction. And so that would make it easier to affirm the district court, because all you would have to do is refile. It's true you'd have to pay the filing bills again, but then it just starts the clock over. Right. Just as long. Oh, my God. I can't believe I did this. Just as long as. But if the statutes run now, then that's a problem. Would the appeal toll it? I wonder. Doubt it. Yeah. Can't give you legal advice. I hope you're not relying on Judge Callahan's legal advice, though. It might be good. I'm just trying to say if you to come in and said something about the statute, I said, where was that on your in your brief? Because I never saw it. I just was thinking, you know, if I apply these factors and it's without prejudice and to be fair, not only is it without prejudice, but what's the standard of review? It's abuse of discretion, meaning I've got double deference to give to the district court. So I think your argument is pretty difficult. So the order of dismissal and. I'm trying to think, didn't the defendants, I thought they. You know what? Here's here's something you have. You still have. There's no way that you have to do this. But since you it seems to have surprised you a bit, you could reserve the balance of your time here with their argument is they've already heard what the question is, and then you have all of that time for rebuttal. Okay. If you want to do that. And if you have the documents with you, you can go ahead and look at it while while you're doing that. That might be the most effective use of your time. Okay. I'll give it over to Mr. Haynes. Thank you. Okay. You still have all your time. Look very carefully at September 25th, 2013, which is the order to show cause to see what the judge said. Good morning. Good morning. Pleases the court. Aaron Haynes appearing for appellee Palo Verde Unified School District. So surprises in the Ninth Circuit. Okay. You analyzed it like it was a dismissal with prejudice as well. We did, Your Honor. The issue with one, the lawsuit was never refiled into the issue with regard to statute, whether that was even in play or not was never put into the opening brief. So we didn't feel it was necessary to discuss that. I know. But if you analyze it from a standpoint of without prejudice, it's why you still may apply the same factors. It's a different analysis. So why did you analyze it like dismissal with prejudice? We were responding to the opening brief, Your Honor, and we were following the five factors as set forth by the district court. And it was our opinion that the court has discretion to do what it did. Well, did the district court say dismissal with prejudice and then it accidentally got put in the minute order as a dismissal without prejudice? Or what did the district court say? It did not. It was without prejudice, Your Honor. Well, that being said, you know, appellant's lawyer wasn't the only one that was asking for continuances. The defense, you asked for a lot of continuances. And if you look at it, and I can see, I don't know, just my, I wasn't a district judge, but I was a trial judge in the state court, that both of you kept stipulating, you had a pretty tight trial schedule. The district court put you on a pretty tight trial schedule. While both of you kept stipulating for continuances, and at some point the judge, and you can stipulate all you want, but it's ultimately the judge's decision. And at some point the judge got, you know, got fussy about that and said, okay, no more, and seemed to focus on the appellant, and then suddenly, say like the e-mail that she wrote, and then your side just sort of ganged up and said, oh, I see our opportunity, so, yeah, we're going to say, yeah, it's all her fault that it's gotten this far. Tell me about that. Sure, Your Honor. With regard to request for continuance, this is true. I did request continuances. And the first deadline for the pre-trial required filings came and went June 24th, I received nothing. The dates were continued on my ex parte out into August. The next deadline of August 5th came and went, again, with no filings whatsoever from opposing counsel. Well, it seems like both of you decided this was too, you had problems, there had been a lot of problems at your school district and changeover of people, and it was hard locating the principal and all of those things. So you were trying to find those witnesses and people and trying to make them available for depo, right? I was, Your Honor. And with the two. And the time schedule didn't work for you either. With the two continuances it did, Your Honor, we were able to find. Whether it did or not, I mean, I have very little sympathy, to be frank, for either of the parties here. The judge kept giving you a trial date. You kept moving it. The judge moves it a couple of times as if she or he has no other cases on their docket and just at your whim and caprice can move the trial. And after two continuances, the district judge said enough's enough. I think that it borders on the ludicrous that the parties should have even asked for a third extension. Your Honor, if I may. So the third deadline comes and goes, September 10, again with no filings whatsoever. There we have a trial date that we've been told is not going to be moved again. It comes to September 25. Still nothing from opposing counsel as far as the memo of contentions, exhibit list, witness list. I'm flying in the blind here. I have this trial date coming up in three weeks. I don't know what the arguments are going to be. There are 33 separate claims. Did you apply to the district judge to make, to compel the production of that evidence, of that discovery? I did not. Why didn't you? I was doing the best that I could, preparing myself for trial with what I knew, with my knowledge, with what I knew. And that's what happened. It could be. But, you know, with regard to the September 25, when she issued the OSC, again, saying, okay, fine. Plaintiff, you need to give me your documents by September 30. Again, that's a week from trial. Okay, fine. I'm sitting. I'm waiting. 12-12 on the 30th comes by. I'm looking all morning. Where are these documents? I didn't get them the day before or the Friday before. So I file my declaration. I say, look, judge, I can't prepare this for trial. In six days, not possible. I received nothing. So this is my mindset when I'm looking for these extensions. Yes, I'm agreeing to extensions because I need to get everything I can from plaintiff's counsel in order to prepare myself for trial that was one week away. So when you say I did nothing to compel those documents from the court or the court's assistants to get those documents, my declaration is my last gasp. Six, seven days away from trial. I received nothing. Your Honor, what do I do? I think what you do in any case is if you know you have a trial date coming up and you have been received what you claim you're entitled to, you apply to the judge then and there, not wait to the last minute and seek another continuance. And if you're right on the merits, the judge will order compelling your adversary to produce the documents. Counselor, I very much appreciate my colleague Judge Rakoff's approach here. He's on the district bench. He knows what's going on on a daily basis. I was there once and I see what it is here, but I was a little surprised at your argument here. Only because it seems to me that when the judge makes an abuse of discretion decision, you say even if I didn't want it, even if anybody didn't want it, if the judge makes an abuse of discretion decision, we're stuck with it because there's no law to suggest it ought to be otherwise. Now, that seems to be the right idea on appeal. I mean, rather than I was all prepared and she wasn't and I got this and she didn't give me that and that, that was the only thing that I worried about. Because to me, once it's passed the district court, the district court's made a decision, then we're all on standard of review. What do we do with the district court's decision? And it doesn't seem to me there are any arguments to be made that she abused her discretion underneath when she made her decision. Even if you would have wanted it. Even if everybody wanted it, which they did. Once she decides these are the way it is, that's the way it is unless you can find some case, some federal case that says she's out to lunch. I couldn't find it. Do you have one? I do not, Your Honor. With regard to the warnings to Fairness of Judge Phillips, she gave several warnings that after the second continuance, she said, okay, counsel, no more continuances. And with state court, that's where I deal most. Well, and she said that to you, too. And you were trying to get to her. And you just, when you saw that it inured to your benefit, then you dogpiled on her, even though you were both engaged in this conduct. I would respectfully disagree with regard to dogpiling. I was seeking help in getting the documents I needed. It was September 30th. I said, please, Your Honor, I need these documents. Either dismiss this without prejudice or give us the continuance. But I can't appear in front of you in six days. Did you say dismiss this without prejudice? I did. I did. I was able to do that on September 30th. And that's what happened. And then you still analyzed it as a dismissal with prejudice. Let me ask you this. You're here on the appeal. And the plaintiff missed numerous deadlines in our court on appeal. And I would sort of think if you get kicked out of court because of missing deadlines, then you might have learned a bit of a lesson. Is that relevant to the consideration here? I think it is relevant to the consideration. Well, it wasn't in Judge Phillips' mind. She didn't know she was going to do that. In Judge Phillips, she was looking at what was in front of her. She said, okay, even if I do grant another continuance, that's not going to do anything. That's not going to resolve the problems that we're having with repeatedly missing deadlines and filings. And I think the five missed deadlines here, or at least the five continuance here, only illustrates that point. Two of which those requests came after the opening brief was already due. But if we're reviewing Judge Phillips for an abuse of discretion at what was in her head at that time, I mean, yes, it could be evidence of obstreperous behavior and that this is, you know, serial missing deadlines, as it were. But I don't know whether it is. It's kind of the elephant in the room. But I don't know if it's relevant. There is one other question I'd ask you. My review of the record suggests that by the time of the motion for reconsideration, the plaintiff had not filed anything more in order to bolster her case on reconsideration. Is that true? That is correct, Your Honor. There were multiple declarations stating why the work could not be performed given caseload and other issues, but the actual documents that needed to be filed, that Judge Phillips was demanding be filed, were never filed. Well, the reason I ask that is, again, I'm on standard of review. Abuse of discretion, and I see reconsideration as only appropriate if the district court is presented with newly discovered evidence, which didn't happen, committed error, clear, or the judge committed clear error, which I couldn't see would happen, or there's an intervening change in controlling law, which absolutely didn't happen. So I was trying to say, what is the best argument? What was presented from the time the court made its decision and the motion for reconsideration? And all you're telling me is affidavits saying how busy she was. That's correct, Your Honor. Thank you. Okay, your time's expired. Thank you for your argument. Thank you. Unless, do either of my colleagues have any questions? I have no more. Okay, thank you. Thank you. In my defense, there was no problem with, we had both engaged in diligent discovery. The biggest problem was that I stipulated to him producing the documents late. Well, but the problem is stipulations only go so far. Right. You know, those of us that wear the black robe and control the scheduling, you know, how many times does the judge have to tell, you know, what part of no do you, do either of you not understand? Correct. It's when we say, it's a little bit like anyone that's raised children. When I say no, does that mean until I count to three on no or whatever? And she said, you've already gotten two continuances. I'm not giving any more. What part of no did you not understand? Right. Now, Mr. Haynes had provided several declarations indicating to Her Honor that he planned to produce the discovery. Now, keep in mind, I served the request for discovery for the financial records in April. He got them to me the day my exhibit list was due, 569 pages on September 30th. So I thought in view of those circumstances and in view of the circumstances that each time the seven times or how many times he filed his application to extend the trial date, he had indicated to his, Her Honor, that because of the turmoil, the rapid turnover of staff, he claimed that it was very difficult to get all these documents. He planned to get the documents to me in September, and the judge never said anything. I was lulled into complacency. But in terms of being on, I was on time with everything. The pretrial documents, the pretrial statement, the Miranda contention of law impacts and so on, was that given my experience with practicing in the federal courts for 40 years, I was certain that even though she gave these increments of one month in view of the fact that the You were certain she would exercise her discretion in your favor, but she did not. But she did not. So why is that an abuse of discretion when both of you were told, I'm not continuing the trial again? Because he did not get the documents to me until the day my exhibit list was due, 569 pages. And I thought So you had several remedies. First of all, you could have moved sooner to compel. Right. You could have also asked for sanctions to be imposed. You could have even asked for the jury to be instructed that there was a failure of your adversary to timely produce, and they could draw an adverse inference from it. Right. You had many, many remedies available. Right. And I did not avail myself of those remedies, because I thought, why get into those kinds of remedies when all it was was that, okay, he was late, I got the documents on September 30th, which was the date that my exhibit list was due for trial, that other than that, it was a fairly seamless proceeding. With those two extensions, we did finish discovery. The other thing I want to say is this. I have practiced in the federal courts throughout the land, including twice in the U.S. Supreme Court, for 41 years. I have never, ever experienced this with any federal judge. But having said that, the financial documents are very I'll invite you to come visit the Southern District of New York. That's where I have not appeared. I've appeared in several courts, but not the Southern District of New York. And I know there's exceptions. But what I'm saying is, is that Mr. Winnett, who was the who would be trying the case, and I had a lot of thought that these were the best dates for trial and discovery. And she cut us off by eight months. Furthermore, she only gave, it was kind of like a, what do you call it, the robo-discovery? I think judges Well, do you concede, though, that your arguments are all better if it were a dismissal with prejudice? Right. Yes, yes. I'm just trying to figure out the logistics of where we are now, because I certainly will go and there's certainly more retaliation and more problems with the district. And I just I just want to say this. I didn't push him. I realized that I like Mr. Haynes. Francine and I really enjoyed working with him. But I just cannot. I hope you won't ascribe my failure to demand those documents sooner, because I can't tell you the problems of those special ed kids back in Blythe. And I hope I have an opportunity to truly bring the facts of that case. I realize there's a public policy and expeditious completion of cases, but we can't forget that those kids are entitled to their rights under IDEA, individuals with disabilities. I think we do a lot of IDEA cases. Yes. And they have been systematically deprived of FAPE, a Fair and Appropriate Education. And Francine has been their only advocate. She fights for them and they just treat her with, as we have alleged in our complaint, I think I had like, what did he count up, 31 counts. Well, we're not insensitive to the merits of any case, but you certainly understand, and I'm sure you've explained it to your client, that we have to deal with the procedural status here. Right. That's what we have to deal with. Now, I've allowed you to go over your time, but if my colleagues have any questions, I would be more than happy to defer to them. I have to figure out the logistics, I guess. Well, we don't give legal advice. Thank you both for your argument in this matter. This case will stand submitted.
judges: Callahan, N.R. Smith, Rakoff